IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCOTTIE HULVEY, #4277869, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-00408 |
| ) | Judge Campbell / Knowles |
| WARDEN CHARLES CARPENTER, ) | |
| SGT. KAYSER NOLTON, ) | |
| CPL. BLAKE POLLOCK, and ) | |
| CPL. COREY THOMPSON, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 73. In support of their Motion, Defendants have contemporaneously filed a Memorandum of Law (Docket No. 74), a Statement of Undisputed Facts (Docket No. 75), and the Affidavits of Wayne Carpenter (Docket No. 76), Kayser Nolton (Docket No. 77), and Joel McConnell (Docket No. 78).

Plaintiff has filed a "Motion to Deny Summary Judgment," which the Court will construe as a Response to the instant Motion. Docket No. 79. Plaintiff has contemporaneously filed a supporting Memorandum of Law (Docket No. 80), and his Affidavit (Docket No. 81), but has not filed a response to Defendants' Statement of Undisputed Facts, nor has he filed his own Statement of Undisputed Facts.

Plaintiff, who at all times relevant to the case at bar was an inmate housed at Riverbend Maximum Security Institution ("RMSI"), filed this pro se, in forma pauperis action pursuant to

42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights. Docket No. 1. Plaintiff sues RMSI Warden Charles Carpenter, Sgt. Kayser Nolton, Cpl. Blake Pollock, and Cpl. Corey Thompson in their individual capacities only.[1] *Id.* Plaintiff seeks $50,000 in compensatory damages from each Defendant. *Id.*

In the instant Motion, Defendants argue that they are entitled to summary judgment because: (1) *respondeat superior* is not a basis for the imposition of liability under § 1983 and Plaintiff has failed to establish sufficient personal involvement by Defendant Carpenter; and (2) Plaintiff cannot sustain his Eighth Amendment claim as the facts do not demonstrate that Defendants knew of, and disregarded, a substantial risk of serious bodily harm to Plaintiff. Docket No. 73.

Plaintiff responds:

>   1. The facts, when fully developed through the discovery process, will demonstrate that the defendants *Wayne Carpenter, Kayser Nolton, Blake Pollack* and *Corey Thompson* knew of and simply disregarded the substantial risk of serious bodily harm to the plaintiff thereby violating plaintiff's *Eighth Amendment* rights.
>
>   2. The facts, when fully developed through the discovery process, will demonstrate that the plaintiff is not relying on the *theory of respondeat superior* as asserted by defendant *Wayne Carpenter*. Rather, the plaintiff is asserting that the Defendant, *Wayne Carpenter* created and thereafter commanded the other named defendants to carry out the practices giving rise to plaintiff's exposure to *substantial*

---

[1] Although the original style of the case lists "Tenn. Dept. Of Correction" as a Defendant and the Docket Sheet lists "Tennessee Department of Corrections Authorities" as a Defendant, neither is listed by Plaintiff in his Complaint as a Defendant, and Summons' were issued only to the individual named Defendants. *See* Docket Sheet. Accordingly, neither "Tenn. Dept. Of Correction" nor "Tennessee Department of Corrections Authorities" are parties to the instant Motion, nor will they be addressed herein.

> *risk of serious bodily harm* in violation of the *Eighth Amendment*.

Docket No. 79 (emphasis original).

For the reasons set forth below, the undersigned concludes that Plaintiff has failed to demonstrate that Defendants violated his constitutional rights. Absent such a violation, Plaintiff cannot sustain his constitutional claims and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment be GRANTED, and that this action be DISMISSED.

## II. Facts

### A. Allegations of Plaintiff's Complaint[2]

The allegations of Plaintiff's Complaint, in their entirety, are as follows:

> On 9-4-13 I was escorted to my designated work area (the tray room) by Corporals Blake Pollock and Corey Thompson. After I arrived at my work area I was approached and informed by Sgt. Kayser Nolton that I was to be locked in my designated work area (which is an unsafe room due to poor ventilation and no emergency call button to notify staff in case of an emergency) per Warden Charles Carpenters descretion [*sic*]. Sgt. Kayser Nolton, even after knowing about the unsafe conditions of the small room still locked me in it without proper working equipment (non-slip boots). After a few minutes of being locked in the small, steam filled, unsafe room and since I wasn't being properly supervised and the room has neither an emergency call button or proper ventilation, I began to over heat. I passed out hurting my lower back and right front side of my hand in the process. After being found laying on the wet tray room floor obviously in pain Sgt Kayser Nolton then called the code to alert the nursing staff that I had been hurt. I was then carried to the institutions clinic on a stretcher. My vitals were taken and I was x-rayed. I requested pictures to be taken of my injuries and to be sent to an outside hospital but was denied both.

---

[2] The allegations of Plaintiff's Complaint are not in a form required by Fed. R. Civ. P. 56, but rather, are provided solely as contextual background information.

3

> My rights were violated due to being locked in a room that was knowingly unsafe due to poor ventilation, no emergency call button, poor staff supervision, and no proper working equipment (non-slip/water proof boots). Therefore im holding The Warden Charles Carpenter, Sgt Kayser Nolton, Corporal Blake Pollock and Corporal Corey Thompson responsible due to acting careless and deliberate indifference [*sic*]. They each knew about the unsafe conditions of the small room but still allowed me to be locked in it. The result of their careless actions resulted in me being hurt.

Docket No. 1.

### B. Affidavit of Wayne Carpenter

Wayne Carpenter was, at all times relevant to the instant action, the Warden at RMSI, and as such, was responsible for the overall supervision and operation of the prison, including more than 700 inmates and more than 300 staff members. Docket No. 76, ¶ 1.

On September 4, 2013, Plaintiff was a maximum security inmate, housed in RMSI Unit 3. *Id.*, ¶ 2. Per TDOC records, Plaintiff's work assignment was in the tray room in the center core of the housing unit. *Id.* In accordance with TDOC and RMSI policies, maximum security inmates are not to have contact with each other because of the threat to the safety and security of the institution. *Id.*, ¶ 3. Maximum security inmates require the most staff supervision and generally are the most violent and dangerous inmates at the institution; the inmates who have behavioral problems; and are at the highest security level because they cannot follow prison rules. *Id.* A maximum security inmate who is assigned to the tray room is to be secured in the tray room for the safety and security of the institution. *Id.*

Per Incident Report #1044397, Plaintiff was secured in the tray room in accordance with policy and procedure, and a short time later, was found on the floor; medical staff was called and Plaintiff received immediate medical care and treatment. *Id.*, ¶ 4.

4

No staff members were disciplined as a result of the incident in question because it did not appear that anyone had done anything wrong. *Id.*, ¶ 5.

**C. Affidavit of Kayser Nolton**

Kayser Nolton was, at all times relevant to the case at bar, employed by TDOC as a Correctional Sergeant at RMSI, and was in charge of the supervision of Unit 3 as Officer in Command during his shift. Docket No. 77, ¶ 1. Unit 3 housed approximately 96 maximum security inmates, including Plaintiff. *Id.*, ¶¶ 1, 2. In accordance with TDOC and RMSI policies, maximum security inmates are not to have contact with each other because of the threat to the safety and security of the institution. *Id.*, ¶ 3. A maximum security inmate who is assigned to the tray room is to be secured in the tray room for the safety and security of the institution. *Id.*

On September 4, 2013, Plaintiff was escorted from his cell by Cpl. Corey Thompson and was secured in his work station, the tray room. *Id.*, ¶ 4. A short time later, Cpl. Blake Pollock and Sgt. Nolton found Plaintiff lying on the floor in the tray room, and a Code 4, medical emergency, was called. *Id.* Plaintiff was seen by medical staff and treated for a cut on his forehead, and was moved to the clinic for observation. *Id.* Neither Cpl. Thompson, Cpl. Blake, nor Sgt. Nolton had any personal involvement in Plaintiff's medical care and treatment. *Id.*, ¶ 5.

Neither Sgt. Nolton, nor any other staff members in Unit 3, considered the tray room to be an unsafe area. *Id.*, ¶ 6. As far as Sgt. Nolton knows, there had not been any previous injuries to any inmate in this area. *Id.* The tray room did not have inadequate ventilation. *Id.* If Plaintiff had felt he was in distress on September 4, 2013, he could have notified an officer in the center core area for help by signaling and knocking on the door. *Id.*

There was no willful wrongdoing by any staff in Unit 3 regarding the September 4, 2013

incident involving Plaintiff, and neither Sgt. Nolton, nor any other TDOC employee, was deliberately indifferent to Plaintiff's safety on September 4, 2013. *Id.*, ¶ 7. The September 4, 2013 incident involving Plaintiff was an accident, and Plaintiff apparently fell on the floor. *Id.*, *referencing* Injury Accident report #1044397 (Docket No. 77, pp. 4-6).

**D. Affidavit of Joel McConnell**

Joel McConnell is the TDOC Health Services Administrator. Docket No. 78. In that capacity, he has submitted Plaintiff's TDOC medical records. *Id.* Plaintiff's medical records show that he incurred no serious bodily harm in the September 4, 2013 incident; he was assessed with "bruise above his right eye," "abrasion to R eyebrow," his vital signs were normal, and his neurological assessment was normal. *Id.*, pp. 3, 10, 12. Records indicate that Plaintiff reported to the health care provider who assessed and treated him after the incident that he "fainted in the tray room," and that he did not know how he fell. *Id.*, pp. 3, 10. Records also indicate that Plaintiff refused an x-ray, which was ordered by the physician on September 4, 2013, the date of the incident, but that he ultimately cooperated and received an x-ray of his skull on December 4, 2013, which revealed "no bony or soft tissue abnormalities." *Id.*, pp. 2, 10, 11, 20, 29. Records further show that Plaintiff received a CT scan on January ;17, 2014, the results of which were normal with "no evidence of hemorrhage," "no evidence of abnormal brain or meningeal enhancement," and "no bone abnormality." *Id.*, pp. 30-31.

**E. Plaintiff's Affidavit**

Although Plaintiff has submitted a sworn Affidavit, that Affidavit does not set forth any facts; rather, Plaintiff's Affidavit "outline[s] the evidence sought through *discovery* in order to substantiate the claims against the defendants in this action." Docket No. 81, ¶ 1 (emphasis

6

original). Plaintiff's Affidavit contains 12 separately numbered paragraphs of items he "would show" upon completion of discovery. *Id.*, ¶¶ 4-15.

### III. Analysis

**A. Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the pending Motion on February 12, 2015. Docket No. 73. Plaintiff filed his Response on March 11, 2015. Docket No. 79. Accordingly, Plaintiff has properly responded to the instant Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant . . .
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendants' Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not

disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B.  Summary Judgment Standards**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond to their Statement of Undisputed Facts or provide his own Statement of Undisputed Facts. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**C. 42 U.S.C. § 1983**

**1. Generally**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**2.  Deliberate Indifference to an Inmate's Safety**

Under the Eighth Amendment, prison administrators have an obligation to take reasonable measures to ensure the safety of staff, administrative personnel, visitors, and inmates. *See, e.g., Hudson v. Palmer*, 468 U.S. 517 (1984); *Youngberg v. Romero*, 457 U.S. 307 (1982). Moreover, negligence by prison officials is not sufficient to give rise to liability under the Eighth Amendment. *Davidson v. Cannon*, 474 U.S. 344 (1986). Rather, prison officials must have a sufficiently culpable state of mind; they must have been aware of a serious risk of harm to the inmate's safety and been deliberately indifferent to this risk. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

In order to establish deliberate indifference, an inmate must establish that prison officials: (1) were actually aware of a serious threat to the inmate's safety; (2) deliberately disregarded the serious threat; and (3) the deliberate disregarding of the serious threat to the inmate's safety resulted in the unnecessary and wanton infliction of pain on the inmate. *Walker v. Norris*, 917 F.2d 1449, 1454 (6th Cir. 1990).

### C. The Case at Bar

As set forth in the Affidavits recounted above, the undisputed facts establish, *inter alia*, that Defendants: were not aware of any previous injuries occurring to an inmate from being secured in the tray room, were not aware of any risk of serious harm to Plaintiff, and did not consider the tray room an unsafe area. It is further undisputed that there was no willful wrongdoing by any TDOC employee. Additionally, Plaintiff's medical records establish that he received prompt medical attention and treatment, and that he did not suffer serious bodily harm as a result of the September 4, 2013 incident. Given the undisputed facts, Plaintiff cannot establish that Defendants knew of, and disregarded, a serious risk to his safety. Accordingly, Plaintiff cannot prevail on his Eighth Amendment claims.

### IV. Conclusion

For the foregoing reasons, the undersigned concludes that Plaintiff has failed to demonstrate that Defendants violated his constitutional rights. Absent such a violation, Plaintiff cannot sustain his Eighth Amendment claim and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 73) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge